William R. MONKS, Petitioner,

v.

UNITED STATES PAROLE COMMIS-
SION et al., Respondents.

Civ. No. 78–391.

United States District Court,
M. D. Pennsylvania.

Dec. 6, 1978.

**860**

William R. Monks, pro se.

Sal D. M. Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for respondents.

## MEMORANDUM

NEALON, Chief Judge.

Petitioner, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, instituted this habeas corpus action pursuant to 28 U.S.C. § 2241. Petitioner contests the validity of the July 19, 1977 decision of the United States Parole Commission (Commission) denying him parole. There is no dispute concerning the averments made in the habeas petition and the statements contained in the exhibits appended to respondents' answer. Accordingly, since the pleadings do not present factual issues material to the questions of law raised by this case, an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2243; *Boeckenhaupt v. United States Parole Commission,* Civil No. 77–771, slip op. at 1 (M.D. Pa., filed Sept. 12, 1977); *deVyver v. Ward-*

*en,* 388 F.Supp. 1213, 1215–16 (M.D.Pa. 1974). *See generally* C.A. Wright, *Procedure for Habeas Corpus,* 77 F.R.D. 227, 245 (1978). Because I believe that the Commission improperly weighed in its deliberations on petitioner's parole application petitioner's reversed murder conviction and failed to state with sufficient specificity the reasons for classifying his offense behavior severity as "greatest" and the reasons for denying him parole and continuing his case to June of 1979, the Commission will be instructed to grant petitioner a new parole hearing.

## FACTS

In 1974, petitioner was convicted in the United States District Court for the District of Vermont of two counts of bank "burglary"[1] and of one count of interstate transportation of a stolen motor vehicle.[2] Petitioner received a "regular adult" prison term[3] of eight years on each of the bank burglary convictions and a regular adult term of three years on the interstate transportation of a stolen motor vehicle charge. These sentences were ordered to run concurrently. In January of 1977, petitioner pled guilty in the United States District Court for the District of New Jersey to one count of conspiracy[4] and one count of bank "larceny."[5] The New Jersey district court sentenced petitioner pursuant to 18 U.S. C.A. § 4205(b)(2) (Supp.1978)[6] to five years on the conspiracy count and ten years on

1. *See* 18 U.S.C.A. § 2113(b) (Supp.1978). Although offenses under 18 U.S.C.A. § 2113(b) might more properly be referred to as bank theft, the "Hearing Summary" of petitioner's June 8, 1977 parole hearing lists petitioner's offenses as bank "burglary" and they will be so described here. The Hearing Summary indicates that petitioner and a co-defendant stole approximately two thousand ($2000) dollars in silver coins from two Vermont banks.

2. *See* 18 U.S.C.A. § 2312 (1970). The vehicle used in the Vermont bank burglaries was apparently stolen in New Jersey.

3. "Regular adult" sentence refers to a prison term imposed under 18 U.S.C.A. § 4205(a) (Supp.1978). (At the time petitioner was sentenced, regular adult terms were delivered under 18 U.S.C.A. § 4202 (1969).) This sentencing provision was amended by the "Parole

Commission and Reorganization Act," (PCRA), Pub.L.No. 94–233, § 2, 90 Stat. 222 (1976)). An inmate sentenced under this provision "becomes eligible for parole only after serving one-third of his or her full sentence." *Project—Parole Release Decisionmaking and the Sentencing Process,* 84 Yale L.J. 810, 818 (1975).

4. *See* 18 U.S.C.A. § 371 (1966).

5. *See* 18 U.S.C.A. § 2113(b) (Supp.1978). The details of the conspiracy and bank larceny charges are not reported in the Hearing Summary.

6. An inmate sentenced under 18 U.S.C.A. § 4205(b)(2) becomes eligible for parole at the Commission's discretion. *See* 28 C.F.R. § 2.2 (1977).

the bank larceny charge. These terms were ordered to run concurrently with each other and concurrently with the prison terms imposed by the Vermont district court.

█ Petitioner received his initial parole hearing on June 8, 1977, after having served more than one-third of the Vermont sentence.[7] The hearing summary indicates that the hearing examiners took into consideration a number of factors in deciding to recommend that parole be denied, among which were petitioner's juvenile record, which includes a reversed murder conviction; the multiple offenses for which petitioner is currently in prison; petitioner's demonstrated lack of remorse for his criminal activity; and remarks apparently made by a United States Attorney to the effect that petitioner is not a "good parole risk."[8]

The hearing examiners also evaluated petitioner's parole application under the Commission's "paroling policy guidelines."[9] Petitioner's offense behavior severity was rated as "greatest" because of the multiple offenses for which petitioner had been convicted. Petitioner's salient factor score, i. e., parole prognosis, fell within the "good" range. Under the "guidelines" applied in petitioner's case the customary time to be served for an inmate whose offense severity was rated as "greatest" and whose salient factor score fell within the "good" range is 48 months *or more*.[10] Based upon the foregoing, the hearing examiners recommended that petitioner, who at that time had served 40 months in prison, not be paroled and that his case be continued for a regular review hearing in June of 1978.

The Regional Commissioner assigned to petitioner's case disagreed with the hearing examiners' recommendation and referred the matter to the National Commissioners,[11] who decided to continue petitioner's case to the statutory required review hearing in June, 1979. The following statement was provided petitioner as an explanation for the continuance of his parole application until June, 1979:

> Your offense behavior has been rated as greatest severity because of *multiple offenses*. You have a salient factor score of 6. You have been in custody a total of 42 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 48 or more months to be served before release for cases with good institutional program performance and adjustment.

---

7. Petitioner's aggregate prison term (*i. e.*, the sentence that he began serving in 1974 plus the sentence he began serving in 1977) was computed by totaling the maximum amount of time that could be served from the start of his first sentence to the expiration date on the second sentence. Therefore, petitioner's total sentence is stated in the hearing summary as twelve years, six months and sixteen days.

8. Petitioner contends that undue emphasis was placed on the prosecutor's remarks. The PCRA authorizes the Commission to consider all relevant information in making a parole determination. 18 U.S.C.A. § 4207 (Supp. 1978). The Commission's regulations specifically provide that the Commission will consider, if available and relevant, "recommendations regarding the prisoner's parole made . . . by the . . . prosecuting attorney." 28 C.F.R. § 2.19(a)(4). Therefore, contrary to petitioner's contention, consideration of the United States Attorney's remarks was proper.

9. The current "guidelines" are codified at 28 C.F.R. § 2.20 (1977). These guidelines utilize "a grid in which a combination of salient factor score and offense severity rating identifies a 'customary' time span to be served." *Geraghty v. United States Parole Commission*, 579 F.2d 238, 242 (3d Cir., 1978), *petition for cert. filed*, 47 U.S.L.W. 3351(U.S. Oct. 5, 1978) (No. 78-572). The Offense Severity Rating is the Commission's assessment of the gravity of the offenses for which the inmate is currently imprisoned.

> The Salient Factor Score is designed to predict the likelihood that an inmate will succeed on parole. This score is measured by an 11-point Salient Factor Score Scale, which consists of nine weighted personal characteristics that were statistically determined to have high predictive power in discriminating between past groups of releasees who 'succeeded' and 'failed' after their release. All but two of the nine items are part of the inmate's past criminal record and behavior.

> . . .

*Project, supra* note 5, at 823–24.

10. Under the current guideline table, the customary time to be served by an inmate in petitioner's category is 45 months or more.

11. *See* 28 C.F.R. § 2.24 (1977).

After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior and thus is incompatible with the welfare of society. Commission guidelines for greatest severity cases do not specify a maximum limit. Therefore, the decision in your case has been based in part upon a comparison of the relative severity of your offense behavior with offense behaviors—and time ranges specified—in the very high severity category. 18 U.S.C. § 4208 prohibits a continuance in your case of more than 24 months without review. Your next review has been scheduled in accordance with this statute.

Petitioner attempted to appeal the National Commissioners' decision. This appeal, however, was untimely [12] and was accordingly treated as a motion to reopen.[13] The motion was denied because it did not present "new or significant information deemed sufficient to warrant a recommendation for the reopening of [petitioner's] case. . . ." [14] Petitioner's appeal from this ruling was dismissed because "the denial to reopen a case . . . is not an appealable decision." [15]

Petitioner then instituted an action under 28 U.S.C. § 2255 in the United States District Court for the District of New Jersey contending that the denial of parole had frustrated the intention of the sentencing court. Relief in that proceeding was denied.

■ Petitioner now seeks habeas relief from this Court. Some of the claims asserted by him arguably have merit in light of *Geraghty v. United States Parole Commission,* 579 F.2d at 259–263, slip op. at 35–41 (3d Cir. 1978), *petition for cert. filed,* 47 U.S.L.W. 3351 (U.S. Oct. 5, 1978) (No. 78–572). Since he may be among the class certified by the district court in *Geraghty,* I will decline to entertain those claims raised by him in this action that are also being litigated in *Geraghty.*[16] *See Jacobs v. United States Parole Commission,* Civil No. 78–311, slip op. at 1 (M.D.Pa., filed July 17, 1978). *See also Bryan v. Werner,* 516 F.2d 233, 239 (3d Cir. 1975) (not error for district court to refuse to consider a claim being litigated in a class action in another district court where plaintiff is a member of the class).

Petitioner also believes that he is entitled to relief on the following grounds:

(1) the refusal to allow petitioner to contest the validity of the parole denial through administrative channels was wrongful;

(2) the computation of petitioner's aggregate prison term was erroneous; and

(3) the denial of parole and the reasons given therefor contravened statutory and administrative provisions and deprived petitioner of due process.

---

12. An appeal from a decision to deny parole must be taken "within thirty days from the date of entry of such decision." 28 C.F.R. § 2.25(a) (1977). *See* 18 U.S.C.A. § 4215(a) (Supp.1978). Petitioner's appeal was taken almost four months after the parole denial.

13. *See* 28 C.F.R. § 2.28 (1977).

14. Respondents' Exhibit D (Letter of Nov. 7, 1977 from case analyst David E. O'Connor to petitioner).

15. Respondents' Exhibit E (Letter of Nov. 23, 1977 from O'Connor to petitioner).

16. Specifically, I refuse to entertain petitioner's claim that the guidelines defeated petitioner's statutory right to meaningful parole consideration at or prior to the completion of one-third of his prison term. *See* 18 U.S.C.A. §§ 4205–09 (Supp.1978). *See also United States v. Wigoda,* 417 F.Supp. 276, 279 (N.D.Ill.1976); *Kehoe v. Jensen,* 400 F.Supp. 899, 900 (M.D.Pa.1975).

Petitioner also seems to argue that the guidelines may not be applied to inmates who have served one-third of their sentence. This claim, which does not appear to have been presented in *Geraghty,* is clearly without merit. The PCRA contemplates the use of guidelines and there is nothing in the legislation or legislative history to suggest that Congress did not intend that those guidelines be applied only to inmates who had served less than one-third of their sentences. *See* 18 U.S.C.A. § 4203(a)(1); House Conf.Rep.No. 94–648, 94th Cong. 2d Sess. 26–27. Accordingly, relief on this claim will be denied.

These contentions will be considered *seriatim*.

### The Inability to Challenge the Parole Denial through Administrative Channels

■ Petitioner was unable to contest the merits of the decision to deny parole because his appeal therefrom was untimely. It was therefore proper to consider the untimely appeal as a motion to reopen and confine review to whether "new or significant information" had been presented.

■ In addition, the procedural default imposed upon petitioner for failing to appeal within the prescribed time limit cannot be said to violate procedural due process. A procedural default rule promotes the Commission's interest in finality of parole decisions without precluding an inmate from taking an administrative appeal. *Cf., Earnest v. Moseley*, 426 F.2d 466, 469 (10th Cir. 1970) (Commission has authority to establish procedures that effectuate Congress' purpose in establishing the parole system). Accordingly, petitioner's claim that he was wrongfully barred from challenging the validity of the parole decision will be denied.

### Computation of Petitioner's Aggregate Prison Term

■ The Commission has the authority to aggregate sentences for the purpose of determining parole eligibility. *See Walker v. Taylor*, 338 F.2d 945 (10th Cir. 1964); *Newcombe v. Carter*, 291 F.2d 202 (5th Cir. 1961); *Brown v. United States*, 256 F.2d 151 (5th Cir. 1958); *Williams v. Arnold*, Civil No. 76–673 (M.D.Pa., filed Aug. 19, 1976). The Commission computed petitioner's aggregate prison term as commencing on the date of his Vermont sentence and as terminating on the expiration date of the New Jersey sentence. The Commission's computation cannot be considered unlawful or erroneous and, therefore, relief will not be granted on this ground.

### The Parole Denial

The scope of judicial review of parole decisions is closely circumscribed. The court is to ascertain whether the Commission "has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations." *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976). Petitioner contends that the Commission improperly weighed a reversed murder conviction in its deliberations on his parole application; wrongfully categorized his offense behavior severity as "greatest"; and did not provide him with adequate reasons for the denial of parole and continuance to June, 1979. These claims will be considered separately.

■ Petitioner was convicted of murder when he was fifteen years old. This conviction was reversed some fifteen years later because a coerced confession and the tainted "fruits" thereof were admitted into evidence at the murder trial.[17] Although it appears that the hearing examiners did not rely upon the reversed murder conviction in computing petitioner's salient factor score, the hearing summary indicates that the murder conviction was at least a factor in the hearing examiners' deliberations.[18]

17. *See United States ex rel. Monks v. Warden*, 339 F.Supp. 30, 35 (D.N.J.), *aff'd*, 474 F.2d 1337 (3d Cir. 1972). The district court decision indicates that petitioner was arrested and kept incommunicado for over a week while law enforcement officials interrogated him concerning several purse snatching incidents and a murder. Petitioner was not advised during the course of the interrogation that he had the right to remain silent. On the day petitioner confessed he was examined intermittently for fifteen hours. This confession was declared the product of police coercion. Consequently, the confession and tainted evidence were held inadmissible. The court ordered New Jersey to either retry petitioner or release him. The record in this case does not indicate that petitioner was retried on the murder charge.

18. The hearing summary reference to the murder conviction satisfies petitioner's burden of showing that the reversed conviction was considered in deciding to deny him parole. *Cf., Mitchell v. United States*, 482 F.2d 289, 291 (5th Cir. 1973) (petitioner need not show that an unconstitutional conviction actually enhanced his sentence; only that the conviction was considered).

Consideration of reversed convictions in assessing parole risk is not per se impermissible. *See Dye v. United States Parole Commission,* 558 F.2d 1376, 1379 (10th Cir. 1977). Several courts have held, however, that since convictions obtained in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)[19] cannot be considered in the sentencing process,[20] the Commission cannot weigh such an unconstitutional conviction in its parole deliberations. *See, e. g., Majchszak v. Ralston,* 454 F.Supp. 1137 (W.D.Wis.1978); *Wren v. United States Board of Parole,* 389 F.Supp. 938 (N.D.Ga.1975). The issue here then is whether the considerations precluding use of "*Gideon* convictions" in sentencing and parole decisions compel a determination that the Commission cannot consider convictions predicated upon involuntary confessions.

The proscription against the use of *Gideon* convictions in the sentencing process was believed essential to prevent the evisceration of the *Gideon* rule and, concomitantly, the procedural safeguards of our criminal justice system. As the Court in *United States v. Tucker, supra,* 404 U.S. at 449, 92 S.Ct. at 593, observed:

> The *Gideon* case established an unequivocal rule 'making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one.' (citation omitted) . . .
> '[T]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or *enhance punishment* . . . is to erode the principal of that case.'

(emphasis added).

This necessity to protect the constitutionality of our criminal processes recognized in *Tucker* compels the conclusion here that a conviction overturned because of an involuntary confession cannot be considered in parole decisions. The Supreme Court has consistently held that the admission into evidence of a coerced confession vitiates the conviction because it violates the due process clause of the Fourteenth Amendment. *See Brown v. Mississippi,* 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682 (1936); *Chambers v. Florida,* 309 U.S. 227, 228, 60 S.Ct. 472, 84 L.Ed. 716 (1940); *Turner v. Pennsylvania,* 338 U.S. 62, 65, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); *Spano v. New York,* 360 U.S. 315, 324, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). The Court in *Watts v. Indiana,* 338 U.S. 49, 54–55, 69 S.Ct. 1347, 1350, 93 L.Ed. 1801 (1949), stated the policy underlying the rule requiring reversal of a conviction where an involuntary confession was admitted at trial:

> To turn the detention of an accused into a process of wrenching from him evidence which could not be extorted in open court with all its safeguards, is so grave an abuse of the power of arrest as to offend the procedural standards of due process.

This is so because it violates the underlying principle in our enforcement of the criminal law. Ours is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo-American criminal justice since it freed itself from the practices borrowed by the Star Chamber from the Continent whereby an accused was interrogated in secret for hours on end. (citations omitted) Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation. 'The law will not suffer a prisoner to be made the deluded instrument of his own conviction.' (citation omitted) The requirement of specific charges, their proof beyond a reasonable doubt, the protection of the accused from confessions extorted

---

19. *Gideon* held that the states may not convict a person of a felony unless he was represented at trial by counsel or had validly waived his right to the assistance of an attorney.

20. *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Del Piano v. United States,* 575 F.2d 1066, 1067 (3d Cir. 1978); *United States v. Radowitz,* 507 F.2d 109, 112 (3d Cir. 1974).

through whatever form of police pressures, the right to a prompt hearing before a magistrate, the right to assistance of counsel, to be supplied by government when circumstances make it necessary, the duty to advise an accused of his constitutional rights—these are all characteristics of the accusatorial system and manifestations of its demands. Protracted, systematic and uncontrolled subjection of an accused to interrogation by the police for the purpose of eliciting disclosures or confessions is subversive of the accusatorial system. It is the inquisatorial system without its safeguards. For while under that system the accused is subjected to judicial interrogation, he is protected by the disinterestedness of the judge in the presence of counsel.

Thus, the aim of the proscription against the use of involuntary confessions "is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). *Accord, Watts v. Indiana, supra,* 338 U.S. at 50 n. 2, 69 S.Ct. 1347. Criminal trials in which involuntary confessions have been admitted are vitiated "even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction . . . ." *Payne v. Arkansas,* 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975 (1958). *Accord, Spano v. New York, supra,* 360 U.S. at 324, 79 S.Ct. 1202; *Stroble v. California,* 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872 (1952). Involuntary confessions have even been held inadmissible for impeachment purposes. *See Alesi v. Cramer,* 440 F.2d 975, 977 (9th Cir.), *cert. denied,* 404 U.S. 856, 92 S.Ct. 103, 30 L.Ed.2d 97 (1971). And, in *Brown v. Mississippi, supra,* 297 U.S. at 286, 56 S.Ct. 461; the Court noted that use of an involuntary confession for conviction and *sentence* was a clear denial of due process.

It therefore cannot be said, in view of the Court's strong admonitions against the use of coerced confessions, that a conviction, void because an involuntary confession was admitted into evidence, may be used to enhance a prison term. Such consideration of an unconstitutional conviction in the sentencing process would force the inmate to suffer anew from the deprivation of his due process rights and derogates from the principles of our accusatorial system of justice. *See United States v. Tucker, supra,* 404 U.S. at 449, 92 S.Ct. 589.

It has been argued that the parole and sentencing processes are distinct, with separate functions and aims. I believe, however, that the parole process is sufficiently similar to the sentencing process to warrant a holding here that convictions based upon involuntary confessions cannot be weighed in parole deliberations. *See Strader v. Troy,* 571 F.2d 1263 (4th Cir. 1978); *Majchszak v. Ralston,* 454 F.Supp. 1137 (W.D.Wis. 1978); *Wren v. United States Board of Parole,* 389 F.Supp. 938 (N.D.Ga.1975). "Although the stated purposes of sentencing and parole decisions may differ, the practical effect of a denial of parole is to set the amount of time a prisoner must spend incarcerated. Where government action carries such a profound consequence, formalistic distinctions are not compelling." *Majchszak v. Ralston, supra,* 454 F.Supp. at 1144. And while the Commission may consider a wide range of information, including mere allegations of criminal behavior, in determining parole eligibility, *see Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir. 1976), it may not base its decisions on impermissible considerations. *See Strader v. Troy, supra,* 571 F.2d at 1266; *Majchszak v. Ralston, supra,* 454 F.2d at 1143; *Wren v. United States Board of Parole,* 389 F.Supp. at 931. *Cf. United States v. Tucker, supra,* 404 U.S. at 446–48, 92 S.Ct. 589 (sentence may not be founded upon misinformation "of a constitutional magnitude").[21] Therefore, petitioner will be accorded a new parole hearing untainted by any consideration of his reversed murder conviction.

---

**21.** The decisions that preclude consideration of *Gideon* convictions in the sentencing or parole processes are based upon the fact that the decision-maker did not know that the convictions were unconstitutional and thus his decision was based upon an untrue assumption. Here, the decision-makers knew petitioner's conviction had been reversed. The distinction,

■ I believe that petitioner is also entitled to relief because the Commission failed to state with sufficient specificity the reasons why his offense behavior severity was rated as "greatest" and why he was denied parole and his case continued to June, 1979. The reason given for rating petitioner's offense behavior severity as "greatest" was that he had been convicted of "multiple offenses." None of the offenses for which petitioner is currently in prison, however, are classified above the "high" category.[22] Thus, the Commission, in deciding to increase petitioner's offense behavior severity level, had the option of rating petitioner in either the "very high" or the "greatest" category. The Commission's choice of the "greatest" rating, which, in effect, placed petitioner outside the guidelines for parole eligibility purposes, is unexplained.

In *Soloway v. Weger,* 389 F.Supp. 409, 411 (M.D.Pa.1974), I held that a parole applicant is entitled to a "meaningful written statement as to the reasons for the denial of his application." Such a statement of reasons is necessary to insure that the Commission "acted fairly, lawfully and nonarbitrarily." *Id.* at 412. *Accord, Childs v. United States Board of Parole,* 167 U.S. App.D.C. 268, 511 F.2d 1270, 1283 (1974). In addition, " '[a] reasons requirement 'promotes thought by the decider,' and compels him 'to cover the relevant points' and 'eschew irrelevancies.' " *Id.,* 167 U.S.App.D.C. at 280, 511 F.2d at 1282.

The reason given here for classifying petitioner's offense behavior severity as "greatest" does not provide an adequate basis for this court to determine whether the Commission acted arbitrarily. Indeed, the hearing summary contradicts the "greatest" assessment. In the hearing summary, the hearing examiners observe that "[b]asically, [petitioner] is *not a serious offender* with [sic] his prior record is evaluated carefully." To then rate petitioner's offense behavior severity as "greatest" after having noted that he is not a serious offender leaves the court to guess at the circumstances, other than the bare mention of the multiple "non-serious" offenses, that compelled the "greatest" rating.

■ I believe that where, as here, the Commission has the option of increasing an inmate's severity level to either the "very high" or "greatest" category and chooses to increase the level to the "greatest" category it should substantiate that choice with a statement of reasons other than the fact that the inmate is currently in prison on several convictions. That is, in order to effectuate a prisoner's right to meaningful parole consideration, the prisoner must be informed of the reasons why the multiple offenses compelled a severity rating of "greatest" rather than "very high." Such a statement of reasons would indicate "that the specific circumstances of the crime[s] and the [inmate's] part in [them], and not merely the type[s] of the crime[s] generally, was the reason . . . ."[23] to rate the prisoner's offense behavior severity as "greatest" rather than "very high." Since petitioner here was not provided with such a statement of reasons, the Commission will be required to re-examine petitioner's severity rating and, if it decides that the "greatest" rating is proper, provide petitioner with an adequate statement of the reasons therefor.

---

however, is not significant. Case law cited above makes it clear that prior *Gideon* convictions cannot be used to enhance the inmate's sentence. This is true regardless of whether the decision-maker knew or did not know that the conviction was unconstitutional. Furthermore, a parole decision that takes into account a conviction reversed by virtue of the admission of an involuntary confession into evidence may be said to be based upon "misinformation of a constitutional magnitude" because the prior conviction is a nullity. Thus, the decision-maker considers a conviction that is not recognized in the eyes of the law as a conviction.

22. *See* 28 C.F.R. § 2.20 (1977). The paroling policy guidelines indicate that "[i]f an offense behavior involved multiple separate offenses, the severity level may be increased." *Id.* n. 4. The Commission's authority to increase the severity level on the basis of multiple convictions has been sustained. *See, e. g., Maslauskas v. United States Parole Commission,* Civil No. 78–84, slip op. at 4 (M.D.Pa., filed Aug. 24, 1978); *Payne v. United States Bd. of Parole,* Civil No. 76–694 (M.D.Pa., filed Dec. 20, 1976).

23. *United States ex rel. Jacoby v. Arnold,* 442 F.Supp. 144, 150 (M.D.Pa. 1977).

Petitioner's final contention is that an adequate statement of reasons was not provided for denying parole and continuing his case to June, 1979. The "Notice of Action" from the National Commission contains the following elements: (1) petitioner's classification in the "greatest" category; (2) his salient factor score of 6; (3) the 42 months he had been incarcerated; (4) reference to the maximum period of confinement for an inmate in the "very high" category with a salient factor score of six; and (5) a statement that "your release at this time would depreciate the seriousness of your offense behavior *and thus* is incompatible with the welfare of society." (emphasis added) [24]

Although such a notice of action may be sufficient to continue a parole applicant within the guidelines, it is insufficient, where, as here, the continuance extends the applicant beyond the guidelines. Such a statement of reasons says nothing why petitioner should be confined at least 64 months, some 16 months beyond the maximum suggested by the guidelines for prisoners in the "very high" category. *See Bowman v. United States Board of Parole,* 411 F.Supp. 329, 330 (W.D.Wis.1976).

> [W]hat is needed once a 'greatest' prisoner is continued beyond the 'very high' guideline period is a statement of reasons showing that the Commission has considered the specific circumstances of the prisoner's crime and has, in the exercise of its discretion, used those circumstances to determine specifically *where,* between the maximum for the 'very high' category and mandatory release, the prisoner should be placed.

*Jacoby, supra,* 442 F.Supp. at 149 (emphasis in original). *Accord, Bowman v. United States Board of Parole, supra,* 411 F.Supp.

at 330; *Diaz v. Norton,* 376 F.Supp. 112, 115 (D.Conn.1974); *Lupo v. Norton,* 371 F.Supp. 156, 163 (D.Conn.1974). In view of my ruling that petitioner must be granted a new parole hearing, the Commission will not be required to submit reasons justifying the continuance until June, 1979. Any future decision to deny parole and continue petitioner's application, however, must be supported by adequate reasons.

---

24. I concur in the following observation made by Judge Muir concerning the propriety of this statement as a justification for denying parole:

> To the extent that the use of the conjunctive 'and thus' implies that a finding of probable future criminality follows *automatically* from a finding that release would depreciate the seriousness of the offense committed, it is in error. Both the PCRA and its legislative history, (citation omitted) indicate that the 'public welfare' criterion is separate and distinct

from the 'seriousness of the offense' criterion. . . . [T]he Commission's statement of reasons should reflect the separate criteria and the determination made under each one. Otherwise, the inmate and any reviewing court are left to guess at the real reasons for the denial of parole.

*United States ex rel. Boeckenhaupt v. United States Parole Commission,* Civil No. 77–171, slip op. at 11–12 (M.D.Pa., filed Feb. 28, 1977) (emphasis in the original).