Michael D. BRUNNELLE, Petitioner,

v.

Larry KERR, Warden, Respondent.

No. 82–C–698.

United States District Court,
W.D. Wisconsin.

Feb. 2, 1983.

Michael D. Brunnelle, pro se.

John R. Byrnes, U.S. Atty. by Richard E. Cohen, Asst. U.S. Atty., Madison, Wis., for respondent.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Petitioner, currently confined at the Federal Correctional Institution, Oxford, Wisconsin, has filed a petition for a writ of habeas corpus. He attacks various actions of United States Parole Commission (Commission) in setting his parole date.

## FACTS

The Court finds the following facts to be undisputed:

1. On July 22, 1974, petitioner was sentenced to a twenty-five year term of imprisonment for bank robbery.

2. In 1980, petitioner applied with the Commission for parole.

3. On January 20, 1981, petitioner appeared before a panel of hearing examiners for an initial parole determination hearing. The panel discussed with petitioner his offense behavior, prior criminal record, institutional adjustment and aspects of his social history.

The panel relied upon a presentence report dated July 22, 1974 and a progress report prepared by Oxford staff and dated December 5, 1980.

The panel evaluated petitioner's parole pursuant to the guidelines set forth at 28 C.F.R. § 2.20. Petitioner's offense behavior was rated as "Greatest I" severity, as petitioner was convicted for armed robbery which involved gun shots and resulted in the death of his co-conspirator. Using the "salient factor" scoring system pursuant to 28 C.F.R. § 2.20, the panel gave petitioner a score of 2; this indicated a "poor" parole risk.

Based on the foregoing factors, the usual suggested guideline range on months to be served before release was 78–100. The panel, after considering petitioner's history of assaultive behavior (prior convictions for battery and armed robbery) and poor history of community supervision (two previous parole violations), recommended that petitioner be held until parole after 120 months.

4. Prior to rendering a final decision, however, the Commission received further information concerning petitioner.

5. On March 4, 1981, the Commission ordered that petitioner be scheduled for a new initial hearing to disclose to petitioner the newly received information and to consider the impact of that information on the recommendation described in ¶ 3. The hearing was later scheduled as a rehearing.

6. By letter dated March 12, 1981, petitioner received the following description of the information described in ¶ 4:

Pursuant to your request to the Parole Commission for disclosure of documents relative to your upcoming hearing, the following documents have been denied, either in part or in their entirely [sic]. The withheld information has been summarized below as required by law.

| DOCUMENT | SUMMARY |
|---|---|
| Letter dated February 23, 1981; | Summary Provided.[1] |
| Letters dated March 5, and March 6, 1981; | Third Party recommendations against parole. |

| DOCUMENT | SUMMARY |
|---|---|
| Third party letters. | Letters indicating your release would be a threat to society. |

7. On May 14, 1981, petitioner appeared before a panel of Commission hearing examiners. The hearing summary is as follows:

... indicating his recommendation that Brunnelle not be released and that he is a true danger to society. There is a letter dated 03/06/81 ... indicating this person's opinion that the bank robbery was a very well planned and involved a high degree of planning and also the fact that it is the opinion ... that Brunnelle would have shot the responding police officers if the opportunity had presented itself.

SALIENT FACTORS:

(a) Brunnelle has a record dating from 1965 consisting of four (4) convictions with two (2) of these involving robbery.

(b) Prior commitments—Three (3).

(c) Age at behavior leading to first commitment—24.

(d) Checks or auto theft in present offense—Stolen auto was used.

1. The summary of the February 23, 1981 letter from Probation Officer Thomas M. Miller to the Commission stated:

This letter is being written in order to clarify Mr. Brunnelle's involvement in the police chase following the robbery for which he was sentenced to the custody of the Attorney General.

The Federal Bureau of Investigation (FBI), and the Buena Park Police Department report that, though Mr. Brunnelle was not directly involved in the shoot-out between his accomplice, Mr. Bannister, and the police, it was only by accident.

Following the bank robbery in which Brunnelle wheeled [sic] a handgun, Brunnelle and Bannister entered a Volkswagon [sic] and fled the location. They were observed by a bank customer abandoning the vehicle on a nearby parking lot. Brunnelle entered a Volkswagon [sic] Van and Bannister entered yet another Volkswagon [sic] Van, containing accomplice Poplin and her four-year-old daughter. The robbers then left the parking lot as police responded to the location. At that time, Brunnelle's vehicle was stopped by the police and a Buena Park Patrolman stepped out of his patrol car and began approaching Brunnelle in the van. However, the shoot-out with Bannister in the other van began, and the police officer thinking he had stopped the wrong vehicle, got back into his patrol car and joined the hot pursuit of Bannister.

Upon apprehension many months later by the FBI, Brunnelle stated that, had the Buena Park police officer approached his van any closer, the police officer's wife would have been collecting a policeman's pension (paraphrased); i.e., Brunnelle would have *murdered* the police officer. The FBI report that he said this matter-of-factly, and they believe that Brunnelle would have killed the officer without hesitation.

Also, Brunnelle's statement to the probation officer that, had he been in Bannister's van, he would have escaped because there were enough guns and ammunition to effectively keep the police units away, show Mr. Brunnelle's posture, and had circumstances been different, he would have actively engaged in a shoot-out with the police.

In light of the above, it would appear that only fate kept Mr. Brunnelle from engaging an armed conflict with law officers, even by his own admission. Therefore, it is recommended that this type of attitude be weighed against any consideration for an early parole with regard to the inmate.

(e) Parole/probation violator this time—He was under parole supervision from the state of California at the time of involvement in the present offense.

(f) Opiate dependence—No.

(g) Recent employment/schooling—insignificant.

STABILITY FACTORS:

There are no psychological or psychiatric problems indicated.

INSTITUTIONAL:

Brunnelle has now served 82 months and during this time has been placed in Leavenworth, at Marion, at El Reno and the present placement at Oxford. He has received a number of incident reports from 1974 through the present time. He has previously had a number of good time days forfeited, but most of this has been restored. In April, 1981 he had 25 days of forfeited good time as a result of an incident report on the charge of possessing, introduction or use of any narcotics, narcotic paraphernalia or drugs not prescribed for individual by medical staff. His program has been limited and it is noted at one point he was in the control unit at Marion. He indicates his present release plans are to locate to Wisconsin and to seek employment in the area of construction work.

REPRESENTATIVE:

None.

EVALUATION:

This case has a guideline range of 60–72 months. Brunnelle has now served some 82 months. It should be noted the case was seen initially in January, 1981 at which time a Panel recommendation was submitted to the Commissioner in the North Central Regional Office. On 03/04/81 the case was again scheduled for re-hearing on the next available docket with the reason being to disclose to inmate new received information and to consider it's [sic] impact on previous hearing examiner recommendation. This Panel did have available the information that was presented and it does appear that the information has been disclosed to Brunnelle insofar as legally possible. A number of problems did develop in the hearing with regard to the information in the file and the fact that some of it was not disclosable to Brunnelle. Because of this information and the fact that the case was returned for a re-hearing following disclosure the Panel felt restrained to make a recommendation more lengthy than the recommendation of the previous Panel. Brunnelle was rather upset when he learned of this recommendation and had a number of questions that he asked with regard to the new information. Since this information was marked that it could not be disclosed, the Panel was at a loss to explain the recommendation. . . .

RECOMMENDATION:

Continue to expiration.

8. On May 27, 1981, the Commission issued a "Notice of Action" which ordered that petitioner be held until the expiration of two-thirds of his sentence, or 200 months. The Commission provided the following explanation:

Your offense behavior has been rated as very high severity because it involved bank robbery. You have a salient factor score of 2. You have been in custody a total of 82 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 60–72 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because the following circumstances are present: *there is information in the official file indicating that you are a definite threat to society and you have made threats against the life of certain federal officials previously involved in your case.* As required by law, you have also been scheduled for a statutory interim hearing during May, 1983.[2]

2. Emphasis is supplied by the Court.

9. On July 22, 1981, petitioner appealed this decision to the Regional Commissioner. On or about August 12, 1981, the Regional Commissioner affirmed the decision of May 27, 1981.

10. On September 28, 1981, petitioner appealed the decision to the National Appeals Board. On or about January 28, 1982, the National Appeals Board reaffirmed.

## OPINION

■ As this Court wrote only days ago, Congress has given the Parole Commission broad discretion in granting or denying parole, and [ ] the relief this Court could grant is limited to ordering a new parole hearing for petitioner. *Billiteri v. U.S. Board of Parole,* 541 F.2d 938 (2nd Cir.1976). Thus, relief can be granted petitioner only if the Commission has abused its discretion. *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982) ("The inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.")

*Bush v. Kerr,* 554 F.Supp. 726, 730 (W.D. Wis.1982). Petitioner charges that the Commission abused its discretion in three ways: 1) by relying on adverse information that was insufficiently disclosed to petitioner; 2) by failing to provide an adequate statement of reasons for denying parole; and 3) by applying different statutes and regulations to petitioner's parole determination than those in effect at the time of his conviction. The Court will discuss each contention in turn.

## I. DISCLOSURE OF ADVERSE INFORMATION

Petitioner first attacks the summary of adverse information in his parole file, asserting that the information in ¶ 6, Findings of Fact, is inadequate. He cites 18 U.S.C. § 4208, which states in part:

(b) At least thirty days prior to any parole determination proceeding, the prisoner shall be provided with (1) written notice of the time and place of the proceeding, and (2) reasonable access to a report or other document to be used by the Commission in making its determination. A prisoner may waive such notice, except that if notice is not waived the proceeding shall be held during the next regularly scheduled proceedings by the Commission at the institution in which the prisoner is confined.

(c) Subparagraph (2) of subsection (b) shall not apply to—

(1) diagnostic opinions which, if made known to the eligible prisoner, could lead to a serious disruption of his institutional program;

(2) any document which reveals sources of information obtained upon a promise of confidentiality; or

(3) any other information which, if disclosed, might result in harm, physical or otherwise, to any person.

If any document is deemed by either the Commission, the Bureau of Prisons, or any other agency to fall within the exclusionary provisions of subparagraphs (1), (2), or (3) of this subsection, then it shall become the duty of the Commission, the Bureau, or such other agency, as the case may be, to summarize the basic contents of the material withheld, bearing in mind the need for confidentiality or the impact on the inmate, or both, and furnish such summary to the inmate.

Chief Judge Crabb recently noted "that a simple failure or refusal to turn over a [postsentence] report would constitute a violation of 18 U.S.C. § 4208(b) (1976)." *Wilden v. Fields,* 510 F.Supp. 1295, 1312 (W.D. Wis.1981). The information provided to petitioner shows more than "a simple failure or refusal" to disclose. The question, however, is whether the disclosure is sufficient to satisfy § 4208.

Petitioner argues that the summary provided in the Commission's letter of March 12, 1981 is tantamount to no disclosure at all. Respondent replies that the Commission has the obligation to protect those who supply relevant information upon a promise of confidentiality and may be harmed if the prisoner learns of their identity. In this case, the Commission exercised its discre-

tion to protect the authors of the letters that were not disclosed to petitioner.

The legislative history more fully describes the scope of this discretion:

Subparagraphs (1), (2) and (3) of [18 U.S.C. § 4208(c)] closely parallel the provisions of Rule 32 of the Federal Rules of Criminal Procedure relating to the court's power to refuse disclosure of certain information in the presentence investigation report. *The Commission, the Bureau of Prisons, or any other agency which deems the document excludable under subparagraphs (1), (2), or (3) of this subsection shall be responsible for preparing a summary of such document. Such summary should give the inmate an idea of the basic contents of the excluded material but should not reveal information which might violate any need for confidentiality involved. The phrase "bearing in mind the need for confidentiality" includes consideration of possible harm to any person.* In addition, in summarizing material excluded under subparagraph (1) of this subsection, an effort shall be made to avoid unnecessary disruption of the prisoner's institutional program.

H.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, 335, 361–362 (emphasis added).

■ An in camera examination of the materials withheld reveals that the Commission did not abuse its discretion under 18 U.S.C. § 4208(c). The Commission disclosed as much information to petitioner as possible without violating its duty to protect confidential sources.

Petitioner argues, however, that even if the Commission did not violate the statute, its failure to permit more complete disclosure resulted in a hearing that was constitutionally flawed. Petitioner asserts that without more complete disclosure, he had no opportunity to rebut the evidence against him, and his hearing was meaningless. He suggests that the Commission infringed upon his due process rights.

■ The Court notes, as a preliminary matter, that "there is no inherent constitutional protection in parole determination proceedings." *Wilden v. Fields,* 510 F.Supp. at 1309, citing *Greenhotz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). This lack of inherent constitutional protection must be contrasted with the protections mandated by the Supreme Court for parole revocation proceedings. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*Morrissey* firmly settled the proposition that parole revocation hearings must meet minimum due process standards. Chief Justice Burger provided this rationale for such requirements:

We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* at 482, 92 S.Ct. at 2601.

Briefly, this "orderly process" involves the following "minimum requirements of due process":

(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);*

(e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604 (emphasis added).

Earlier in the opinion, the Chief Justice explained requirement (d) more fully:

> On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

*Id.* at 487, 92 S.Ct. at 2603.

 If the Constitution permits an informant to be protected from confrontation, cross-examination, and disclosure during a parole revocation proceeding, *a fortiori,* the informant may receive similar or greater protection in a parole determination proceeding. This Court has already held that the Commission did not abuse its statutory discretion in summarizing the contents of the adverse information in petitioner's file, and, in fact, correctly shielded the informants from possible retaliation, respecting their requests for confidentiality.

The Court of Appeals recently addressed this issue:

> Whether the Constitution requires that a parole applicant have access to his file, or at least to the documents relied upon by the decision-maker, is a question of some dispute. Plainly this specific safeguard is not so basic to compliance with traditional notions of due process as are the more general requirements of notice and hearing. Yet, the cases which have held that prisoners have no constitutional right to information in a parole board's files seem to us to represent *ad hoc* determinations,

and are not expressions of an absolute, invariable rule, *see Dye v. United States Parole Commission,* 558 F.2d 1376 (10th Cir.1977) (*per curiam*); *Billateri v. United States Parole Board,* 541 F.2d 938, 945 (2d Cir.1976); *see also Schuemann v. Colorado State Board of Adult Parole,* 624 F.2d 172, 175 (10th Cir.1980). Whether such access is mandated by due process must be resolved on a case by case basis. *See Williams* [*v. Ward*], *supra,* 556 F.2d [1143] at 1159–1160 (narrowly interpreting *Billateri, supra*). *The relevant inquiry is whether, after taking into account the inherently flexible nature of due process, the combination of procedures available to the parole candidate is sufficient to minimize the risk that a decision will be based on incorrect information.*

*Walker v. Prisoner Review Board,* 694 F.2d 499, 503 (7th Cir.1982) (emphasis added).[3]

 This Court concludes that the "combination of procedures" available to petitioner is sufficient, under the unusual circumstances of this case, to minimize the risk of an erroneous decision. The possible danger to those submitting confidential information to the Commission outweighs petitioner's conceded interest in reviewing the evidence against him. Due process must be flexible enough to provide for a parole determination hearing with some information withheld from petitioner. The alternative is simply inadequate. Total disclosure would result in insufficient credible information flowing to the Commission to assist in the difficult task of setting fair parole dates. Without the promise of confidentiality, important information will be withheld. If it lacks this information, the Commission will be asked to exercise its discretion without all the facts. This interferes with the Commission's obligation to set fair parole dates with the public interest in mind.

---

**3.** The Court of Appeals, after raising the constitutional issue, elected not to decide it. Instead, the Court found that a state regulation mandating release of all documents prior to the hearing was violated. The Court of Appeals thereby determined that the plaintiff's due process rights were violated. The Court finds such a

result troublesome, not only because it has been denied the guidance of the appellate court, but also because such a result appears contrary to *Shango v. Jurich,* 681 F.2d 1091 (1982) (violation of state procedural statute not necessarily violative of Due Process Clause of Fourteenth Amendment).

Petitioner also has substantial procedural protections as well as two administrative appeals (and recourse to the federal courts) to prevent unfairness in his parole determination. The public's only protection is the informed discretion of the Commission.

 Habeas corpus relief on this basis must be denied.[4]

## II. STATEMENT OF REASONS

Petitioner also argues that the Commission's statement of reasons for declining to follow the guidelines in 28 C.F.R. § 2.20 was insufficient. Petitioner directs the Court to 18 U.S.C. § 4206(c), which provides:

The Commission may grant or deny release on parole notwithstanding the guidelines ... if it determines there is good cause for so doing: *Provided,* that the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

*Solomon v. Elsea,* 676 F.2d 282 (7th Cir. 1982) recently discussed this issue. The Court of Appeals permitted the Commission to deny parole notwithstanding the guidelines, where the petitioner's offense behavior involved international smuggling of drugs valued in excess of $1 million. The Court of Appeals approved of the following standard for the statement of reasons:

To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the [Commission's] decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the [Commission's] inferences are based.

*Id.* at 286 (cites omitted).

The Court of Appeals then applied this standard to Solomon's case:

The statement of reasons given to Solomon meets this standard. The statement points out that the Commission denied his request for parole because of the unusual magnitude of Solomon's crimes—an aggravating factor that has taken his case

---

4. Petitioner also raises a related issue. He claims that the Commission abused its discretion by considering reports of his criminal activity that did not result in arrest or conviction. These reports allegedly appeared in petitioner's presentence investigation.

18 U.S.C. § 4207 states:

In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
(3) presentence investigation reports;
(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and
(5) reports of physical, mental, or psychiatric examination of the offender.
There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

Pursuant to this section, federal courts have permitted the Commission to consider unrelated criminal conduct in a presentence report, *Payton v. Thomas,* 486 F.Supp. 64, 68 (S.D.N.Y. 1980), criminal conduct underlying counts dismissed as part of a plea bargain, *United States ex rel. Goldberg v. Warden, Allenwood Federal Prison Camp,* 622 F.2d 60, 64–65. (3d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980), and remarks of a United States Attorney to the effect that an inmate was not a good parole risk, *Monks v. United States Parole Commission,* 463 F.Supp. 859, 861 (M.D.Pa.1978). The information considered by the Commission need not be admissible in a court of law. *Butson v. Chairman, United States Parole Commission,* 457 F.Supp. 841, 844 (D.Colo.1978).

The Court of Appeals for the Seventh Circuit also adopted this view: .

Congress has thus authorized the Commission to consider presentence reports, despite the knowledge that there are no formal limitations to their contents, that they might rest on hearsay, and that they may contain certain information bearing no relation whatsoever to the crime with which the defendant is charged.

*Solomon v. Elsea,* 676 F.2d 282, 288 (7th Cir. 1982) (cite omitted).

The Commission did not abuse its discretion.

out of the purview of the parole guidelines. The essential facts upon which the Commission's inferences are based—the importation, as part of an international smuggling operation, of hashish valued in excess of $1,000,000—are then adequately furnished. This listing of the essential facts also satisfies the second prong of 18 U.S.C. § 4206(c) which requires a "summary of the information relied upon." While the "summary of information" in this case is not as complete as it might be, the Commission has demonstrated sufficient factual basis for its stated reason for denying parole.

In its entirety, the statement adequately informs Solomon of the grounds for the decision and also enables a court of review to determine whether parole has been denied for an impermissible reason. *See Garcia v. United States Board of Parole,* 557 F.2d 100, 105 (7th Cir.1977). The notice is both constitutionally and statutorily sufficient.

*Id.* (footnote omitted)

■ Similarly, the Commission satisfied constitutional and statutory requirements in the statement of reasons listed in ¶ 8, Findings of Fact. While, as in *Solomon,* the summary of the information relied upon is far from complete, petitioner was adequately informed of the grounds for the Commission's decision to deny parole notwithstanding the guidelines. Although the statement that "there is information in the official file indicating that you are a definite threat to society" is rather vague, it was only one of two reasons given for setting a parole date outside of the guidelines. The Commission also determined that petitioner "made threats against the life of

certain federal officials previously involved in your case," an allegation that petitioner does not deny in his petition. In light of the seriousness of a death threat, the Commission would not have abused its discretion if it denied parole *solely* on that basis. Therefore, the Commission furnished petitioner with a sufficiently particular statement of reasons for denial of parole.[5]

The *Solomon* court also held that listing the facts that the offense behavior involved international smuggling and drugs with value in excess of $1 million satisfied the "summary of information" requirement in 18 U.S.C. § 4206(c). *Id.* In this case, petitioner had more. Petitioner had the benefit of the written statement of reasons appearing in Findings of Fact ¶ 8. He was also aware that the decision to go outside the guidelines was based on recent information. That information was disclosed, at least to some extent, in the letter of March 12, 1981 (*see* Findings of Fact ¶ 6) and through discussions with the hearing examiners (*see* Findings of Fact ¶ 7).

Habeas corpus relief on this basis must be denied.

## III. EX POST FACTO

In *Bush v. Kerr,* this Court considered a similar challenge to a parole determination. Petitioner Bush argued that his rights were violated when the Commission applied regulations other than those in effect at the time of his conviction in setting a parole date. The Court wrote:

> *Weaver v. Graham,* 450 U.S. 24 [101 S.Ct. 960, 67 L.Ed.2d 17] (1981) states that "two critical elements must be present

**5.** This result comports with the legislative intent of this provision:

> If a prisoner who has not served the minimum period recommended by the guidelines is denied parole, he should receive a statement containing his severity of offense rating, the calculation of his salient factors score and an explanation of how such a determination utilizing the guidelines was reached. On the other hand, if a prisoner who has served the time required to be eligible for parole under the guidelines is denied parole and this denial results in delaying his

> release beyond the time period recommended by the guidelines, he should receive not only the above information but also a specific explanation of the factors which caused the Commission to reach a determination outside the guidelines.

S.Rep. No. 94–369, 94th Cong., 2d Sess. (1976), *reprinted in* [1976] U.S.Code Cong. & Admin. News, 346. Petitioner received the "specific explanation of the factors which caused the Commission" to assign a parole date later than the guideline date.

for a criminal or penal law to be *ex post facto:* it must be retrospective; that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29 [101 S.Ct. at 964] (footnotes omitted).

*Bush,* at 732.

Bush asserted that the Commission's refusal to grant parole based solely on the seriousness of his offense violated the *ex post facto* clause. After finding that the Commission had indeed applied the regulations retrospectively, the Court concluded that Bush was not disadvantaged by that application. *Id.* at 732–733.

█ Similarly, in this case, the Court may conclude that petitioner's parole date was set by reference to statutes and regulations not in existence when petitioner was sentenced. By the same token, however, petitioner has failed to demonstrate any disadvantage by that retrospective application. The Court finds no evidence that an inmate whom the Commission determines to be "a definite threat to society" and who threatened the lives of federal officials would have been treated differently under the earlier statutes and regulations.[6]

Habeas corpus relief on this basis must be denied.

### ORDER

IT IS ORDERED that petitioner's petition for .a writ of habeas corpus is DENIED.

---

**6.** Under the earlier statute, 18 U.S.C. § 4203, the Commission (then called the Board of Parole) had the authority to release an inmate on parole where there was a reasonable probability that he would remain at liberty without violating the laws and if his release was compatible with the welfare of society. *See Garcia v. United States Bd. of Parole,* 557 F.2d 100, 106 (7th Cir.1977). On the basis of its conclusions that petitioner is a threat to society and had threatened the lives of federal officials, the Commission had the discretion to make the identical parole determination under the earlier statute.

Furthermore, to the extent the Commission considered petitioner's offense severity in computing his parole date, petitioner was not the victim of *ex post facto* treatment. *See Garcia,* 557 F.2d at 105 (offense severity sufficient basis for denying parole under old statute).