John Richard MAJCHSZAK, Petitioner,

v.

George A. RALSTON and Maurcie H. Sigler, Respondents.

No. 77-C-179.

United States District Court, W. D. Wisconsin.

May 2, 1978.

---

John M. Schmolesky, Legal Assistance to Institutionalized Persons Program, Madison, Wis., for petitioner.

John A. Franke, Asst. U.S. Atty., W.D. Wis., Madison, Wis., for respondents.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a petition for a writ of habeas corpus. Petitioner, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, claims that his custody is in violation of the laws and Constitution of the United States. 28 U.S.C. § 2241.

On the basis of the entire record, including the stipulation of facts and documents attached to the parties' briefs, I find the following facts:

## FACTS

On May 4, 1973, petitioner was sentenced to twelve years, pursuant to 18 U.S.C. § 4208(a)(2), upon conviction of bank robbery in violation of 18 U.S.C. § 2113(a).

Having served 46 months of his sentence, on July 21, 1976, petitioner was given a regular review hearing by the United States Parole Commission (Commission). At the time, petitioner had a salient factor score of 4 and an offense severity rating of very high.

Progress reports prepared by prison officials dated April 21, 1976, and May 25, 1976, indicate that petitioner's institutional adjustment had been good.

The guidelines of the Commission, 28 CFR § 2.20, predicated upon good institutional conduct and program performance, suggest that 45 to 55 months be served by a person with a salient factor score of 4, and an offense severity rating of very high. Thus, petitioner qualified then for release on parole under the guidelines.

On August 5, 1976, petitioner was denied parole. The Commission scheduled petitioner's next review hearing for July, 1978, the maximum continuance allowed by 18 U.S.C. § 4208(a)(2), the statute under which petitioner had been sentenced. The reasons for the denial are presented in the hearing summary, dated July 21, 1976, and the notice of action, dated August 5, 1976, both of which state:

"Your offense behavior has been rated as very high severity. You have a salient factor score of 4. Your [sic] have been in custody a total of 46 months. Guidelines established by the commission for adult cases which consider the above factors indicat [sic] a range of 45–55 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and indormation [sic] presented, a decision above the guidelines at this consideration appears warranted

because of your on-going pattern of criminal behavior dating back to 1956,' including parole violation as indicated in the presentence report, and there is not a reasonable probability at this time that you would live at liberty without violating the law."

The presentence report, dated May 1, 1973, to which the hearing summary and notice of action refer, lists petitioner's date of birth as November 8, 1945 but notes that petitioner contends that he was born on November 8, 1947. Petitioner has offered no evidence in this court to substantiate that he was born in 1947 and, therefore, I find that he was born in 1945. The presentence report describes petitioner's juvenile record as follows:

"From 1–19–56 to 5–18–60, Majchszak was referred on ten occasions to the Milwaukee County Juvenile Court for offenses relating to truancy, theft, runaway, uncontrollable, and criminal damage to property. He was specifically placed on juvenile probation on 6–26–57 and 3–1–60.

"On 5–18–60, Majchszak was committed to the State Department of Public Welfare until the age of 21 for violation of his probation and being uncontrollable. There followed a series of parole releases and violations. He was paroled from the Wisconsin School for Boys on 1–19–61 and returned 8–1–61 for four runaways and theft from his father. On 4–18–62, he was paroled but returned 6–4–62 for burglary and car theft.

"He was transferred from WSB to the Wisconsin State Reformatory on 11–30–62 as he assaulted an inmate and several staff members. He was paroled 12–23–63 from WSR but returned 2–16–64 on a new charge of carrying a concealed weapon."

This last charge, carrying a concealed weapon, also appears on petitioner's adult record.

In an affidavit, petitioner testifies that he was never represented by counsel in any of the proceedings against him in the Childrens' Court of Milwaukee County, Wisconsin from 1954 to 1963 and that he never was offered such legal assistance. This contention is not controverted by respondents, and I find it as a fact.

From the presentence report summary of petitioner's juvenile record, I conclude that some of petitioner's appearances before the Milwaukee County Juvenile Court could have resulted in commitment to an institution in which petitioner's freedom would have been curtailed.

Petitioner appealed the parole decision to the Regional Commissioner who affirmed the denial of parole on August 31, 1976. The affirmance stated that "[r]easons given support the decision."

Petitioner then appealed to the National Appeals Board which affirmed the review order of the Regional Commissioner on October 12, 1976. In its Findings and Conclusions, dated October 4, 1976, the National Appeals Board noted that petitioner was a parole violator, summarized his criminal history, including his juvenile record, and concluded that there was "[n]o basis for relief."

## OPINION

Challenging the decision to deny him parole, petitioner asserts that the Commission (1) arbitrarily and capriciously misused the guidelines by according double weight to certain items comprising his salient factor score; (2) ignored petitioner's good institutional adjustment; and (3) improperly considered petitioner's juvenile record. Because the last contention is decisive of this petition, I address it alone.

Petitioner contends that by expressly relying upon his presentence report, with its summary of his juvenile record, the Commission considered constitutionally invalid information, namely, juvenile adjudications held without benefit of counsel. In *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court applied the full panoply of Fourteenth Amendment due process rights to the adjudicatory stage of juvenile proceedings. With respect to the right to counsel, the Court concluded (387 U.S. at 41, 87 S.Ct. at 1451):

". . . the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child."

In the context of the present petition, the mandate of *In re Gault* poses three legal questions: first, whether *Gault* should be given retroactive effect; second, whether the *Gault* right to counsel attached to the particular juvenile adjudications which had been entered against this petitioner; and third, if *Gault* is to be applied retroactively, what are to be the consequences of the Commission's consideration of constitutionally defective juvenile adjudications.

### I. Retroactivity Of Gault

■ The Constitution neither prohibits nor requires retrospective application of judicial decisions. *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The retroactive or prospective effect of a new constitutional rule of criminal procedure depends upon "the peculiar traits of the specific 'rule in question.'" *Johnson v. New Jersey*, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966). Three criteria generally guide a determination of a retroactivity question: (1) the purpose of the new standard; (2) the extent of reliance by law enforcement authorities on the old standard; and (3) the effect on the administration of justice of a retroactive application of the new standard. *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Adams v. Illinois*, 405 U.S. 278, 280, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972). The most critical factor is the purpose to be served by the new rule. *Desist v. United States*, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

Resolution of the retroactivity of the right to counsel announced in *In re Gault* requires no elaborate analysis. The right to

counsel is designed to insure the fundamental fairness of a judicial proceeding. As the Supreme Court has observed:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." [Footnotes omitted.]

*Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971). The Court has abided by this principle in requiring retroactive application of its right to counsel decisions where it has been clear that the lack of counsel threatened the integrity of the adjudicatory process. *See e. g. Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, right to counsel at trial; *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), right to counsel at certain arraignments; *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), right to counsel on appeal; *Arsenault v. Massachusetts*, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968), retroactive application of right to counsel at preliminary hearing where guilty plea is entered; *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968), retroactive application of right to counsel at deferred sentencing hearing. But *see Stovall v. Denno, supra*, denying retroactive effect to the right to counsel at line up; and *Adams v. Illinois, supra*, denying retroactive effect to right to counsel at regular preliminary hearing, in which the Court found that "the probabilities of infecting the integrity of the truth-determining process by denial of counsel . . . were sufficiently less than the omission of counsel at the trial itself or on appeal" and concluded that the countervailing considerations of the prior justified reliance upon the old standard and the impact of retroactivity upon the admin-

istration of justice demanded a non-retroactivity ruling. *Id.* 405 U.S. at 281, 92 S.Ct. at 919. Given the affinity between *Gideon* and *Gault*, there can be little question that *Gault*, like *Gideon*, falls within the category requiring retrospective decisions. *Heryford v. Parker*, 396 F.2d 393, 397 (10th Cir. 1968); *Kemplen v. State of Maryland*, 428 F.2d 169, 177 (4th Cir. 1970); *Workman v. Cardwell*, 338 F.Supp. 893, 897–98 (N.D.Ohio 1972), *aff'd* 471 F.2d 909 (6th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2748, 37 L.Ed.2d 161 (1973).

## II. Application Of Gault To Petitioner's Juvenile Adjudications

It is clear from the record that some of petitioner's juvenile adjudications could have resulted in commitment to an institution in which his freedom would be restricted. In those cases petitioner should have been informed of his *Gault* right to be represented by counsel.

## III. Parole Commission Consideration Of Uncounseled Juvenile Adjudications

Petitioner argues that to permit the Commission to consider his juvenile record in its parole determination would condone the use of constitutionally defective information to set the actual length of his incarceration, in violation of the principle announced in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In *Tucker,* the Court held that the district court must reconsider the sentence imposed upon a defendant. In assigning the sentence, the district judge had given explicit attention to previous felony convictions later invalidated by *Gideon v. Wainwright, supra.* The Court framed the issue as follows:

"[T]he real question here is not whether the results of the [prior state] proceedings might have been different if the respondent had had counsel, but whether the sentence in the [subsequent] federal case might have been different if the

sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained." [footnote omitted]

404 U.S. at 448, 92 S.Ct. at 592. The decision to require a reconsideration of the sentence was deemed essential to protect the *Gideon* right to counsel:

"The *Gideon* case established an unequivocal rule 'making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one.' *Burgett v. Texas,* 389 U.S. 109, 114, [88 S.Ct. 258, 19 L.Ed.2d 319]. In *Burgett* we said that '[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case.' *Id.,* at 115, [88 S.Ct. 258]. Erosion of the *Gideon* principle can be prevented here only by affirming the judgment of the Court of Appeals remanding this case to the trial court for reconsideration of the respondent's sentence."

*Id.* at 449,[1] 92 S.Ct. at 593.

The question presented here is whether *Tucker* should be applied to parole hearings and determinations. Release on parole has become an important part of the administration of criminal justice. The relationship between the functions of parole and sentencing is essential to understanding the correctional process:

"Sentencing and parole release decisions share responsibility for determining length of imprisonment. A decision to parole results in conditional release prior to the expiration of the maximum term; a denial results in continued imprisonment. Although parole release decisions have been regarded as virtually autonomous from sentencing per se, parole is an integral part of the sentencing and correctional process. The parole release decision is often more important than the

---

1. In *Stockwell v. State,* 59 Wis.2d 21, 207 N.W.2d 883 (1973), the Wisconsin Supreme Court applied *Tucker* to *Gault* and, overruling its decision in *Neely v. State,* 47 Wis.2d 330, 177 N.W.2d 79 (1970), held that pre-*Gault* juvenile adjudications in which the juvenile was denied right to counsel could not be considered in sentencing proceedings.

sentence in determining how long prisoners actually spend incarcerated." [footnotes omitted]

"Parole Decisionmaking and the Sentencing Process," 84 *Yale L.J.* 810, 814 (1975). Also see Kastenmeier & Eglit, "Parole Release Decisionmaking: Rehabilitation, Expertise, and the Demise of Mythology," 22 *Am.U.L. Rev.* 477 (1973). This similarity between sentencing and parole release decisions compels the conclusion that *Tucker* must be applied to parole determinations.

The similarity between the parole and the sentencing processes results in part from the guidelines now used by the Commission. These guidelines suggest a range of time to be served by inmates before release. The suggested length of incarceration depends upon the combination of the severity of a prisoner's offense and his or her particular parole prognosis (known as the "salient factor score"). 28 C.F.R. § 2.20(b). The categories of offense severity reflect the Commission's evaluation of the gravity of different offenses (which evaluation is wholly independent of the evaluation made by the judges at the times of sentencing). The salient factor score is calculated by assigning points to items relating to the prisoner's past criminal history and his or her release plans.

Notably absent from the factors considered in computing the salient factor score is a prisoner's rehabilitative progress and his or her institutional performance. Although good institutional conduct and program performance are preconditions to parole under the guidelines, the Commission expressly rejected rehabilitative progress as a variable in assessing the salient factor score. Its stated reason is that such progress cannot be detected or measured. 40 Fed.Reg. 41329. In bypassing this factor for parole computations, the Commission foregoes consideration of information which was not available to the sentencing judge but which is accessible to the Commission. Thus, although the sentencing judge is presumably concerned with the goals of deterrence, incapacitation, and rehabilitation, and the Commission is presumably concerned with the narrower question of whether there is a reasonable probability that an inmate will be able to live in society without violating the law, the information utilized in reaching these different determinations is much the same. See *Parole Decisionmaking and the Sentencing Process, supra,* at 826–29.

There is little doubt that, like its use in imposing a sentence, the use of a juvenile record in evaluating a prisoner for parol can be harmful to the prisoner's chances for favorable consideration. The information relied upon by both the sentencing judge and the Commission is contained generally in the presentence investigation report. This is true here. The Commission specifically mentioned the presentence report as the source of its information. In addition, the salient factor score draws heavily upon a prisoner's past criminal history, including his or her juvenile record. Prior convictions, both adult and juvenile, prior incarcerations, both adult and juvenile, prior parole revocations, both adult and juvenile, and a person's age at his or her first commitment are all weighted. A juvenile record reflecting convictions, confinements, and revocations clearly lowers one's salient factor score and consequently reduces one's chances for release on parole. Thus, the accuracy of the presentence report is just as crucial for parole hearings as for sentencing hearings.

*Tucker* requires a remand for a new sentencing hearing when a judge gives explicit consideration to invalid prior convictions. In the present case, it cannot be said with certainty that the petitioner would have been granted parole had the Commission not considered his uncounseled juvenile adjudications and resulting commitments and parole violations. Petitioner's adult record also reveals prior convictions, incarcerations and parole revocations all of which are properly considered in determining his parole eligibility. Whether petitioner's adult record alone would have resulted in a decision to deny his parole is not clear. However, re-evaluation of petitioner's qualifications for parole remains the responsibil-

ity of the Commission. A new parole hearing is the appropriate remedy. Unlike juvenile waiver hearings, *see e. g. Brown v. Wainwright*, 537 F.2d 154 (5th Cir. 1976), or other situations in which the proceeding challenged by a habeas petition occurred years before a court was called upon to evaluate it, in this case the parole hearing can be reconstructed without sacrifice of accuracy and fairness. The information utilized by the Commission in its August 5, 1976 decision is readily available for reconsideration, and the lapse of time is not so great as to render a new parole hearing unduly burdensome or unreliable.

This decision is supported by *Wren v. United States Board of Parole*, 389 F.Supp. 938 (N.D.Ga.1975). There a prisoner challenged the parole board's use of invalid prior convictions, obtained without benefit of counsel in violation of *Gideon v. Wainwright, supra*, in its decision to deny him parole. After reviewing the requirements of *Gideon* and *Tucker*, the court concluded:

> "If then a sentence cannot be founded even 'in part upon misinformation of constitutional magnitude,' 404 U.S. at 447, 92 S.Ct. at 592, neither can a decision as to the manner in which the sentence will be served (implicating as it does important interests in liberty, see, *Morrissey v. Brewer*, 408 U.S. 471, 480–82, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) be founded upon constitutionally invalid information. If a prisoner cannot be sentenced 'on the basis of assumptions concerning his criminal record which were materially untrue,' *Id.*, quoting *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), then neither can a decision which affects his freedom, however restricted, be based on constitutionally impermissible considerations."

389 F.Supp. at 941. The decision is further supported by *United States v. Lufman*, 457 F.2d 165 (7th Cir. 1972) in which the Seventh Circuit applied the *Tucker* rule to the introduction of evidence at trial and held that a conviction subsequently voided by *Gideon* cannot be used to convict a person for violation of a federal statute making it unlawful for a convicted felon to possess a firearm.[2]

The government contests the application of *Tucker* to parole decisions, arguing that to prohibit consideration of uncounseled juvenile adjudications would be inconsistent with the general rule that the Commission may take into account a wide range of information, including unproved allegations of criminal conduct, in assessing a prisoner's eligibility for parole. It is true that hearsay allegations about criminal behavior may be weighed in parole decisions, as well as in sentencing. *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2nd Cir. 1976). It may also be true that, like hearsay charges, while not proving that a prisoner has been formally or properly convicted of a crime, uncounseled convictions may indicate that the prisoner has a history of antisocial behavior. The critical distinction, however, is the value assigned to these different types of evidence. Undoubtedly, greater weight is accorded to a conviction than to an unsubstantiated accusation. Thus, specific attention to invalid prior convictions is likely to be more damaging than consideration of hearsay or other unproved charges.

In *Tucker*, the Supreme Court rejected an argument by the government that the "wide and largely unreviewable" discretion of a district judge in imposing sentence

---

2. *Neely v. Quatsoe*, 317 F.Supp. 40 (E.D.Wis. 1970), does not require a different result. In *Neely* a sentence was imposed after reviewing an inaccurate juvenile record which contained arrests for offenses resulting in commitments later invalidated by *In re Gault, supra*. The court acknowledged that reliance on material misinformation may constitute a denial of due process under *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), but concluded that a resentencing was not required because the trial judge confirmed the original sentence once the juvenile convictions had been set aside. *Neely* was decided before *Tucker*. I need not decide whether confirmation of the initial sentence, without a new hearing, is sufficient under *Tucker* to remedy the constitutional infirmity of the sentencing process. In the case before me there is no suggestion that the Commission, on its own initiative, has re-affirmed its August 5, 1976 decision.

justifies consideration of uncounseled convictions. The Court responded that the imposition of the sentence in *Tucker* resulted not from "the informed discretion of a trial judge, but [from a decision] founded in part upon misinformation of constitutional magnitude." 404 U.S. at 448, 92 S.Ct. at 592. The same reasoning applies to a decision by the Commission which enjoys an equally "wide and largely unreviewable discretion."[3]

The government also tries to diminish the precedential importance of *Tucker* by arguing that petitioner's uncounseled juvenile convictions were not used by the Commission, as by the sentencing court in *Tucker*, to increase the length of petitioner's sentence but rather solely to determine whether petitioner, if released from confinement, would be likely to live at liberty without violating the law. Although the stated purposes of sentencing and parole decisions may differ, the practical effect of a denial of parole is to set the amount of time a prisoner must spend incarcerated. Where government action carries such a profound consequence, formalistic distinctions are not compelling.

Finally, the government argues that through petitioner's appeal of the parole decision, the Commission became fully aware that his juvenile convictions were constitutionally suspect for lack of counsel. The government contends that in contrast to the district judge's sentence in *Tucker*, the Commission's decision did not rest upon constitutionally invalid information.

Such an argument lacks credibility where, as here, the record, and specifically the findings and conclusions of the National Appeals Board, shows no acknowledgment of the constitutional infirmity of the juvenile adjudications but instead recites the

petitioner's juvenile history as supporting the denial of parole.

## ORDER

Accordingly, IT IS HEREBY ORDERED that on the 30th day following the entry of this order, the petitioner is to be released from any and all restrictions imposed upon him by reason of the sentence imposed upon him on May 4, 1973, unless the United States Parole Commission shall have afforded petitioner a fresh parole review hearing and shall have reconsidered petitioner's eligibility for parole in a manner consistent with this opinion.

---

**3.** The *Wren* court anticipated and rejected the argument:

"The government might correctly respond to this analysis that the board's discretion is not limited to formal conviction of past crimes, but rather encompasses all manner of information bearing upon rehabilitation potential, community safety, and the like. To this argument the court would respond only that this precise argument was raised in

*Tucker* with regard to the sentencing judge's discretion, but the Supreme Court found it unpersuasive to prevent a remand for reconsideration. 404 U.S. at 446, 92 S.Ct. 589, 30 L.Ed.2d 592. If the prior convictions involved here were in fact uncounselled and were in fact considered by the parole board, a similar reconsideration, without the taint of these unconstitutional priors, is warranted." 389 F.Supp. at 941.