**Robert William BENEDICT, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

Civ. A. No. 82–73746.

United States District Court,
E.D. Michigan, S.D.

July 21, 1983.

---

properly determined his "salient factor score" under those guidelines.

Robert William Benedict, in pro. per.

Sheldon N. Light, Asst. U.S. Atty., Detroit, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

Before the Court is a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the September 25, 1981 decision of Respondent, the United States Parole Commission, denying Petitioner release on parole. Petitioner contends that he is entitled to habeas relief because: (1) Respondent's application of then recently revised parole decision-making guidelines, 28 C.F.R. § 2.20 (1981), to his parole application violated the *ex post facto* clause of the Constitution, and (2) Respondent im-

## I

Petitioner is a prisoner at the Federal Correctional Institution, Milan, Michigan, serving an eight-year sentence imposed by the United States District Court for the Northern District of California. On June 18, 1981, he applied for parole. He was afforded an initial parole hearing on September 1, 1981. Based upon the recommendation of the hearing panel, on September 25, 1981, the Parole Commission ordered Petitioner's custody continued to the expiration of his sentence, a period of approximately seventy months. The Commission gave the following reasons for that decision.

> Your offense behavior has been rated as Greatest II severity because you conspired with others to possess with intent to import and distribute more than 1 kilo of 100% pure heroin. You have a salient factor score of 6. You have been in custody a total of 19 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 64 + months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted. You have failed to maintain a good institutional record as evidenced by the forfeiture of 50 days of statutory good time. As required by law, you have also been scheduled for a statutory interim hearing during September, 1983.

On Petitioner's administrative appeals, the Regional Commissioner and the National Appeals Board affirmed the previous decision. The decision of the National Appeals Board added the following to the previous statement of reasons for denial of parole:

> After review of all relevant factors and information presented, it is found that your release at this time would depreciate

[sic] the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and the time ranges specified in the Greatest I severity category.

Having exhausted available administrative remedies,[1] Petitioner filed the instant application for habeas relief. Counsel for Respondent has answered the petition and Petitioner has submitted a reply brief.

## II

■ Petitioner first contends that the Respondent's use of parole-decision making guidelines contained in 28 C.F.R. § 2.20 (1981), which modified those in effect on the date of his offense violated the *ex post facto* clause of the Constitution.[2]

## A

To understand the basis of Petitioner's claim, it is helpful to briefly review the nature and evolution of the parole guidelines employed by Respondent.[3] For many years, the United States Board of Parole, (the predecessor of the United States Parole Commission), made its parole release decisions on an *ad hoc,* unstructured basis, without reference to any formally articulated criteria or policies other than broad statutory language concerning the probability of law-abiding conduct by the prisoner and the welfare of society.[4] In 1973, the Parole Board adopted its first set of parole guidelines as a means of promoting more consistent and equitable exercise of discretion. *Ruip v. United States,* 555 F.2d 1331 (6th Cir.1977). The operation of the guidelines has been summarized as follows:

Under the guidelines system, hearing examiners no longer render their recommendations at large, but instead by reference to a set of guideposts which indicate the customary time to be served by convicts meeting certain offense severity and parole prognosis characteristics. An inmate being considered for parole is first assigned a "salient factor score" statistically designed to aid in predicting the risk of parole violation by reference to nine weighted personal attributes, such as employment and drug use history. The salient factor score is then used to determine the inmate's "parole prognosis" on a scale from "poor" to "very good." Next, the inmate's crime is rated on an "offense severity scale" ... The recommended range of time to be served for the resulting combination of parole prognosis and offense severity score is then found in a table of guidelines.

*Warren v. United States Parole Commission, supra* at 191–192 [footnote omitted]. In the Parole Commission and Reorganization Act of 1976, 18 U.S.C. § 4201, *et seq.,* the Congress specifically authorized the Parole Commission to promulgate parole decision making guidelines, see § 4203(a)(1), and provided that parole release decision were "subject", in part, to those guidelines. See § 4206(a)(1).

Two characteristics of the guidelines are particularly noteworthy. First, as the name indicates, they are merely guidelines rather than inflexible rules. *Ruip v. United States, supra* at 1333. Although in practice the Commission generally adheres to the guidelines, *Id.*; see also *Warren v. United States Parole Commission, supra,* at 192, the Commission retains discretion to render decisions above or below the guidelines. Under 18 U.S.C. § 4206(c), the Commission "may grant or deny release on parole not-

---

**1.** Petitioner has clearly exhausted administrative remedies as to his first (*ex post facto*) claim, but see § III, *infra,* concerning exhaustion as to his second (salient factor score) claim.

**2.** U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1.

**3.** The discussion of the development of the Parole Commission guidelines herein is based in substantial part on *Warren v. United States Parole Commission,* 659 F.2d 183, 189–193 (D.C.Cir.1981).

**4.** See 18 U.S.C. § 4203(a) (1970), repealed by 18 U.S.C. § 4201 *et seq.* (1976).

withstanding the guidelines referred to in [§ 4206(a)] if it determines that there is good cause for so doing ..." Similarly, the Commission's own regulations have consistently provided that where the circumstances warrant, decisions outside of the guideline range may be rendered. See e.g. 28 C.F.R. § 2.20(c) (1980); 28 C.F.R. § 2.20(c) (1981). Moreover, the Commission is authorized by both statute, 18 U.S.C. § 4207, and regulation, 28 C.F.R. § 2.19 (1982), to consider a broad range of information relevant to the individual parole release decision apart from the factors considered in the guidelines.

Second, the guidelines are not fixed or static; they have been repeatedly revised by the Commission in the light of its experience.[5] The Commission has explicitly retained, in its regulations, the discretion to revise or modify the guidelines at any time as deemed appropriate. See e.g. 28 C.F.R. § 2.20(g) (1980). The authority to modify the guidelines is also implicit in the Commission's statutory authority to promulgate guidelines, 18 U.S.C. § 4203(a)(1). Furthermore, the legislative history of the Parole Commission and Reorganization Act indicates that the Congress expected the Commission to monitor its use of the guidelines and consider modifications if decisions outside the guidelines are being rendered frequently. See Conference Committee Report, P.L. 94–233, 2 U.S.Code Cong. & Admin.News, pp. 335, 359–360 (1976).

**B**

The focus of Petitioner's *ex post facto* claim is the July, 1981 revision of the parole guidelines which changed the "offense severity rating" applicable to his offense. Petitioner was convicted of conspiracy to import heroin. The record indicates that the offense involved more than 4 kilograms of a heroin mixture of very high purity, the equivalent of more than one kilogram of "100% pure" heroin. Under the parole

guidelines in effect at the time of Petitioner's sentencing in 1980, the applicable offense severity category was "Greatest I," then the most severely rated opiate offense in the guidelines. The example of that offense behavior was described as follows:

> Opiates, possession with intent to distribute/sale [managerial or proprietary interest and very large scale (e.g. offense involving *more than 50 grams* of 100% pure heroin, or equivalent amount).

20 C.F.R. § 2.20 (1980) [emphasis supplied]. Given Petitioner's salient factor score (6),[6] application of that offense severity rating would have indicated a customary range of 52–64 months in custody. *Id.*

However, the Commission amended its guidelines, effective August 31, 1981, see 46 Fed.Reg. 36,137, 36,139 (July 14, 1981), to include in the "Greatest II" offense severity category the following:

> Opiates, possession with intent to distribute/sale [managerial or proprietary interest and very large scale (e.g., offenses involving *more than 1 kilogram (1000* grams) of 100% pure heroin or equivalent amount).

Consequently, under the amended guidelines, Petitioner's offense was deemed "Greatest II" severity, and the customary range of imprisonment was 64 + months rather than the 52–64 months indicated under the previous guidelines. According to Petitioner, that modification of the guidelines violates the *ex post facto* clause.

**C**

The Constitution prohibits both Congress and the States from enacting *ex post facto* laws.[7] That prohibition includes "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). In its most recent expli-

---

**5.** The most recent revision of the guidelines, one which substantially reorganizes the system of offense severity rating, was published at 47 Fed.Reg. 56334 *et seq.* (December 16, 1982).

**6.** Petitioner's challenge to the computation of that salient factor is discussed in § III, *infra.*

**7.** *See* note 2, *supra.*

cation of the clause, the Supreme Court stated:

> [T]wo critical elements must be present for a criminal or penal law to be *ex post facto;* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

*Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1980) [footnotes and citations omitted]. *Weaver* involved a Florida statute which reduced the amount of "gain time" for good conduct and obedience to prison rules deducted from a prisoner's sentence. The Court held that detrimental application of the law to a prisoner whose crime was committed before enactment of the statute violated the *ex post facto* clause. Rejecting the state's contention that the gain-time provisions were not part of the "law annexed to the crime," the Court explained that "the critical question . . . is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence." *Id.* at 32, fn. 12, 101 S.Ct. at 966, fn. 12.

### D

In the instant case, Petitioner has established neither of the two elements of the *Weaver* test for *ex post facto* violations.

### 1

First, the challenged revisions of the parole guidelines are not a retrospective criminal or penal law. Unlike the statute involved in *Weaver v. Graham,* the change in the administrative offense severity rating did not change "the quantum of punishment," attached to a crime already completed. *Id.,* at 33, 101 S.Ct. at 966.

Petitioner's argument to the contrary rests on the erroneous assumption that the amended guidelines substantially altered his *eligibility* for parole. As Petitioner notes, a statute or administrative regulation which retrospectively eliminates or delays parole eligibility violates the *ex post facto,* clause. *See, e.g. Warden v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974); *Shepard v. Taylor,* 556 F.2d 648, 654

(2d Cir.1977). However, the Sixth Circuit has specifically held that while "parole consideration is part of the law annexed to the crime" *Ruip v. United States, supra,* 555 F.2d at 1335, the Parole Commission's guidelines do not inflexibly limit parole eligibility and thus, are not "laws" subject to the *ex post facto* clause:

> These guidelines are not law, but guideposts which assist the Parole Commission (and which assisted the Board of Parole) in exercising its discretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines.

*Id.* The majority of the other Circuits faced with the question have similarly concluded that retrospective application of Parole Commission guidelines to cases where the offense was committed before adoption of the guidelines does not violate the *ex post facto* clause. *Warren v. United States Parole Commission, supra* at 185; *Shepard v. Taylor, supra; Zeidman v. United States Parole Commission,* 593 F.2d 806 (7th Cir. 1979); *Rifai v. United States Parole Commission,* 586 F.2d 695 (9th Cir.1978). *Compare: United States v. Ferri,* 652 F.2d 325, 327 (3rd Cir.1981); *Forman v. McCall,* 709 F.2d 852 (3d Cir.1983).

*Graham v. United States Parole Commission,* 629 F.2d 1040 (5th Cir.1980), on which Petitioner relies, is inapposite. The issue in *Graham* was a change in the Parole Commission regulations concerning interim parole hearings which for the first time confined the Commission's discretion to advance a presumptive release date to "clearly exceptional circumstances." 28 C.F.R. § 2.14(a)(3)(ii) (1978). The Court remanded the case to the District Court for a determination of whether that specific change in the scope of relief available following an interim hearing "significantly restricted" the prisoner's parole eligibility. *Graham v. United States Parole Commission, supra* at 1043–44. *Graham* in no way suggested that the Parole Commission guidelines in general, or the offense severity ratings in partic-

ular, restrict parole eligibility and therefore, come within the coverage of the *ex post facto* clause. Indeed, a subsequent decision of the Fifth Circuit cited *Graham* for the proposition that there was no *ex post facto* violation in the retroactive application of the guidelines. *Stroud v. United States Parole Commission,* 668 F.2d 843, 847 (5th Cir.1982).

Petitioner's reliance on *Welsh v. Mizell,* 668 F.2d 328 (7th Cir.1982), is similarly misplaced. In *Welsh,* the Seventh Circuit held that application of a state statute which fundamentally changed parole release criteria to a prisoner who committed his crime more than ten years before enactment of the statute violated the *ex post facto* clause. The *Welsh* opinion specifically noted that the change in parole criteria at issue there was "more marked" than was true in *Ruip v. United States, supra. Welsh, supra,* 668 F.2d at 332. More important, the marginal adjustment of the offense severity rating in the Parole Commission's guidelines challenged by Petitioner herein is simply not comparable to the drastic change in the basic statutory criteria for parole eligibility involved in *Welsh.*

Under *Weaver v. Graham, supra,* the critical inquiry in an *ex post facto* analysis is whether a penal or criminal law adds to the "quantum of punishment" attached to a crime already completed. The "punishment" attached to Petitioner's crime was the statutorily authorized eight year sentence actually imposed, subject to the statutory provisions defining his eligibility for parole. At the time of Petitioner's crime and sentencing, the applicable statutes provided that he would be eligible for parole *consideration* upon completion of one third of his sentence, 18 U.S.C. § 4205(a) and subject mandatory release after service of two thirds of his term, § 18 U.S.C. § 4206(d). The decision to grant or deny parole within those parameters was left to the discretion of the Commission. The subsequent revisions of the guidelines by which

the Commission exercises that discretion do not alter "the quantum of punishment." In *Warren v. United States Parole Commission, supra,* the Court observed:

The punishment prescribed for Warren was to be held after his minimum term at the mercy of parole authorities exercising their judgment as best they could.

\* \* \* \* \* \*

... [B]ecause Warren was sentenced to be held at the discretion of the parole authorities, under the *ex post facto* clause he *is* entitled to an opportunity to have that discretion exercised; anything less would impermissibly augment his penalty. But an entitlement to have discretion exercised does not imply an entitlement to have it exercised in a particular way; the essence of discretion is the absence of fixed rules.

*Warren v. United States Parole Commission, supra,* 659 F.2d at 196 [emphasis in original, footnote omitted]. *Accord, Cosgrove v. Smith,* 697 F.2d 1125, 1134 (D.C. Cir.1983).

Similarly, in *Joost v. United States Parole Commission,* 535 F.Supp. 71, 76 (D.Kansas 1982), the court stated:

[W]hile the opportunity or eligibility to be considered for parole may not be decreased after it has been established at sentencing, the actual time at which to grant release on parole is flexible. The decision as to when to grant parole prior to the two-thirds point of a sentence is not inflexibly fixed in any statute, regulation or policy. As long as the parole grant decision remains flexible and results from individualized consideration, there is no *ex post facto* violation.

As noted above, the Parole Commission guidelines are not rigid or inflexible. *Ruip v. United States, supra.* Moreover, Petitioner does not contend, nor does the record indicate, that the guidelines were rigidly and mechanically applied in his case.[8]

Since the Commission's adoption of guidelines to structure the exercise of its discre-

---

**8.** The report of Petitioner's parole hearing and the Notice of Decision on appeal indicate that the Commission considered a variety of information concerning Petitioner's background and institutional record as well as the circumstances of his offense.

tion does not come within the scope of the *ex post facto* clause, *Ruip v. United States, supra,* it follows that subsequent adjustments in the guidelines (like the offense severity rating change at issue here) do not violate the constitutional prohibition of *ex post facto* laws. *See Zeidman v. United States Parole Commission, supra; Richards v. Crawford,* 437 F.Supp. 453, 456 (D.Conn. 1977). Thus, Petitioner has not demonstrated, as *Weaver v. Graham* requires, that the revision of the parole guideline was a retrospective criminal or penal law.

2

Assuming *arguendo* that Petitioner could satisfy the first part of the *Weaver* test, he has not shown that the change in the Commission's guidelines meets the second element of an *ex post facto* violation: that it disadvantaged him and similarly situated prisoners (i.e. those convicted of a managerial or proprietary role in the distribution of more than one kilogram of 100% pure heroin). Although the increase in severity rating for that offense from "Greatest I" to "Greatest II" changed the customary range of imprisonment *in the guidelines* from 52–64 months to 64 + months, it does not appear that the 1981 guideline revisions changed the duration of confinement *actually imposed* by the Commission for that type of very large scale heroin offense.

As noted above, the threshold for the most severely rated opiate offense under the 1980 guidelines (the guidelines which Petitioner's claim should have been applied) was more than *50 grams* of 100% pure heroin. In the 1981 revisions, the Commission, in effect, divided that broad category of offense severity into two sub-categories: a) 50–1000 grams, which remained a "Greatest I" offense and, b) more than 1000 grams, which was designated "Greatest II." When the Commission promulgated that revision of the guidelines, it explained that under the 1980 regulations, it had consistently made release decisions above the guidelines in cases of multi-kilogram heroin distribution and importation, (sub-category b, *supra*) and that the guidelines were revised to "more accurately reflect the Commission's

current decision-making practices in cases of multi-kilogram heroin distribution and importation where the offender played a managerial or proprietary role in the offense." 46 Fed.Reg. 36,137, 36,139 (July 14, 1981).

It is undisputed that Petitioner played a managerial or proprietary role in a conspiracy to import more than four kilograms of heroin. Consequently, it appears quite probable, if not certain, that the Commission would have rendered a decision above the 1980 guidelines (52–64 months) had they been applied. Thus, Petitioner has not demonstrated that the 1981 revisions of the offense severity rating actually disadvantaged him or other similarly situated prisoners.

3

In sum, the revision of the Parole Commission guidelines was neither a retrospective penal law, nor substantially disadvantageous to Petitioner. Accordingly, Petitioner's *ex post facto* claim must fail. *Weaver v. Graham, supra.*

III

A

Petitioner also contends that the Commission improperly determined his salient factor score under the guidelines by using inaccurate information concerning his prior criminal record. In computing Petitioner's salient factor score, the Hearing Examiner Panel made the following findings:

Subject has two (2) prior conviction resulting in one (1) prior commitment of more than 30 days. In April, 1973 while serving in the military he was convicted of escape from lawful custody and passing worthless checks. He was fined $228.00. In December, 1974 he was convicted in the country of Japan of violation of the narcotics control law, received 2½ years in custody and according to him he did not serve any time. It does appear, however, that he was sentenced to time served which apparently was 80 days and therefore he is being charged with a commitment.

The hearing summary further states: "The prisoner admits the factual basis of the salient factor score items, but does not agree with the offense severity as it was perceived by the examiner panel." (Respondent's Exhibit 1, p. 4).

At each stage of his administrative appeals, Petitioner asserted, as he does in the instant habeas petition, that he has no prior convictions or commitments which could properly have been considered by the Commission, and that consequently, his salient factor score should have been 9 rather than 6.[9]

Specifically, Petitioner claimed that his "alleged" [10] 1974 conviction in Japan on narcotics charges was invalid because he was not represented by counsel. Petitioner argued that the Commission's use of that conviction and sentence violated his constitutional rights, citing *Majchszak v. Ralston*, 454 F.Supp. 1137 (E.D.Wis.1978), and the Commission's own *Salient Factor Score Manual*, ¶ A(h).[11]

In addition, Petitioner claimed that the Commission should not have considered his military conviction, which he characterized as "AWOL and overdrawing his personal checking account," because "neither of these acts would be criminal for a civilian." Thus, according to Petitioner, the *Salient Factor Score Manual*, ¶ A(d) prohibited consideration of the conviction.[12]

Although both of these claimed inaccuracies in Petitioner's salient factor score were raised in his administrative appeals, neither the Regional Commissioner nor the National Appeals Board specifically responded to Petitioner's allegations in their written decisions affirming the original decision by the Commission. Because Petitioner has now advanced these claims on grounds for habeas relief, and because the papers initially submitted by Petitioner and Respondent did not contain a clear statement of Petitioner's version of the disputed factual issues and the documents concerning Petitioner's criminal record upon which the Commission relied, this Court entered an Order Directing Expansion of the Record. Pursuant to that Order, Respondent has filed the record considered by the Commission—a copy of Petitioner's presentence report—as well as a supplemental brief. Petitioner, has also filed, in letter form, a statement concerning his 1974 conviction in Japan.[13]

B

■ To the extent that Petitioner relies upon alleged violations of certain provision of the Commission's *Salient Factor Score Manual*, he fails to state grounds for a writ of habeas corpus. That Manual is, as its name indicates, an internal policy statement providing technical guidance to employees of the Commission charged with calculating salient factor scores. The Manual is not part of the parole guidelines themselves, 28 C.F.R. § 2.20 *et seq.*, or any other regulations formally promulgated by the Commis-

---

9. Under the 1981 guidelines, a salient factor score of 9 was deemed "very good" parole prognosis. The combination of that prognosis and "Greatest II" offense severity rating yields a period of 52 + months in contrast to the 64 + months indicated with a salient factor score of 6. See 28 C.F.R. § 2.20 (1981).

10. In both his administrative appeals and in his habeas corpus petition, Petitioner repeatedly described the Japanese conviction as "alleged," apparently suggesting that the conviction did not even exist.

11. A copy of pertinent provisions of that Manual are appended, as "Exhibit A", to Respondent's Brief dated December 6, 1982, Subparagraph A(h) concerns convictions obtained without counsel.

12. Subparagraph A(d) of the *Manual* states:
Count all prior military convictions for acts which would have been subject to civilian criminal law (e.g., theft). Do not count military type offenses. However, this does not preclude an examiner panel from considering serious or repeated military misconduct as a negative indicant of parole prognosis (i.e., a possible reason for overriding the salient factor score in relation to this item).

13. In that letter, Petitioner unequivocally admits, for the first time, that he was actually convicted in Japan on narcotics charges, but states that he does not remember whether, during these Japanese criminal proceedings he claimed indigency, requested counsel, or waived the assistance of counsel.

sion, under the authority of the Parole Commission and Reorganization Act, 18 U.S.C. § 4203(a)(1), and in accordance with the Administrative Procedure Act, 5 U.S.C. § 553. See 18 U.S.C. § 4218. Thus, the judicially enforceable requirement that the Commission act in accordance with own regulations, see, *e.g. Staege v. United States Parole Commission,* 671 F.2d 266 (8th Cir.1982), does not extend to the informal policy statements contained in the Salient Factor Score Manual. Such statements of policy do not confer enforceable rights on individuals. *Cf. United States v. Thompson,* 579 F.2d 1184 (10th Cir.1978) (Department of Justice policy statements not enforceable by private citizen). Accordingly, Petitioner's challenge to the Commission's consideration of his military conviction must fail.[14]

### C

 Judicial review of a decision by the Parole Commission in this habeas corpus proceeding is narrow in scope. Habeas relief is available only on the grounds that the Commission's action violated the "Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), or was arbitrary and capricious or an abuse of discretion. *Adams v. Keller,* 713 F.2d 1195, at 1198–99 (6th Cir.1983); *Stroud v. United States Parole Commission,* 668 F.2d 843, 846 (5th Cir.1982); *Dye v. United States Parole Commission,* 558 F.2d 1376, 1378 (10th Cir. 1978).

Petitioner's allegation that the Commission based its decision in part, on an uncounseled criminal conviction presents at least a colorable claim of a violation of his constitutional rights. *See, e.g., Majchszak v. Ralston, supra,* (W.D.Wis.1978) (Rule of

*United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)—precluding consideration, during sentencing, of prior invalid convictions obtained without counsel—also applies to parole hearings and determinations); *Wren v. United States Board of Parole,* 389 F.Supp. 938 (N.D.Ga. 1975) (Same). *Compare: Dye v. United States Parole Commission, supra (United States v. Tucker, supra* does not apply to parole determinations).

However, Petitioner's bare allegation that he was not represented by counsel in the Japanese criminal proceedings does not, in itself, establish grounds for relief. Rather, Petitioner must demonstrate that the Japanese conviction is *invalid* under Sixth Amendment standards,[15] i.e., that he neither had nor validly waived the assistance of counsel. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Furthermore, Petitioner must show that the Commission mistakenly believed that the prior conviction was valid and extended the period of his incarceration as a result. *Cf. United States v. Fleishman, supra.*

### D

In *United States v. Cesaitis,* 506 F.Supp. 518, 522–523 (E.D.Mich.1981), this Court observed:

> . . . [W]hile the law prohibits the use of counsel-less convictions in a determination of guilt or to enhance punishment, it is not altogether clear that the law prohibits the inclusion of such information in a presentence report for consideration by a defendant's correctional institution or the Commission after a determination of

---

**14.** In any event, the presentence report supports the Commission's finding that Petitioner's military convictions included escape from lawful custody and "passing worthless checks." Such acts would have been subject to civilian criminal law, and were thus properly considered under the provisions of the *Manual.* See note 12, *supra.*

**15.** The validity of the Japanese conviction is properly determined under Sixth Amendment standards, see *United States v. Fleishman,* 684

F.2d 1329, 1345–1346 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 464, 74 L.Ed.2d 614, not, as Respondent contends, solely under Japanese law. In any event, the authorities cited in Respondent's most recent brief indicate that the Japanese Constitution provides a criminal defendant with a right to counsel comparable to the Sixth Amendment. (Response to Order Directing Expansion of the Record, June 27, 1982, p. 3).

guilty and sentence has been imposed by a trial court.

\* \* \* \* \* \*

The cases are clear, however, that once a presentence report is passed on to the Commission, limitations arise as to the information the Commission may actually use in determining parole.... Any dispute regarding information in a report at this stage or regarding the extent of the Commission's consideration of information in a report in violation of a defendant's constitutional rights, is handled through the administrative processes of the Commission with the Court providing review only if the actions of the Commission are arbitrary and capricious or an abuse of discretion. [citations omitted].

Similarly, the Commission's own regulations concerning information presented at parole hearings provide, in pertinent part:

> If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accord with reason and probability.

28 C.F.R. § 2.19(c).

Here, as previously noted, Petitioner disputed the accuracy of the information concerning the Japanese conviction contained in his presentence report during his administrative appeals. The Commission did not however, respond to Petitioner's claims or otherwise specifically resolve the factual dispute. There are several possible explanations for the failure of the Commission to credit Petitioner's allegations concerning the validity of the Japanese conviction. First, it is not clear that Petitioner actually raised the issue in his initial parole hearing.[16] Second, the Commission may have relied upon instructions in the *Salient Factor Score Manual,* that "The Commission's presumption is that a conviction is valid unless the evidence is clear that it is not. *Id.* ¶ A(h). It is also possible that, in view of Petitioner's equivocal statements about the existence of the conviction,[17] the Commission simply discounted the credibility of his claim that he was denied the assistance of counsel.

Nevertheless, the record of the administrative proceedings filed in this case does not contain any clear finding by the Commission concerning the Petitioner's claim. Because the resolution of the factual dispute is, in the first instance, the responsibility of the Commission, *United States v. Cesaitis, supra;* 28 C.F.R. § 2.19(c), the matter must be decided by the Commission.

Under the particular circumstances of this case however, there is no need to order the Commission to conduct a new parole hearing. Petitioner has already been scheduled for a statutory interim hearing in September of this year. In that proceeding he will have the opportunity to clearly state his version of the facts surrounding the allegedly invalid conviction and to present to the Commission any available evidence in support of his claim. The Commission, in turn, can then resolve any material factual dispute and make appropriate findings.[18] A decision adverse to Petitioner would, of course, be subject to administrative review under 18 U.S.C. § 4215, and, within the limited scope described above, judicial review under 28 U.S.C. § 2241.

## IV

In sum, Petitioner's claims that the application of revised parole guidelines violated

---

**16.** While Petitioner states that he raised the issue during the hearing, the Hearing Summary, which notes several other specific objections and arguments raised by Petitioner, contains no mention of Petitioner's present claim that the Japanese conviction was uncounseled and invalid.

**17.** See notes 10, 13 *supra.*

**18.** This Court does not suggest that the Commission is required to make formal and extensive findings of fact. It need only, as 28 C.F.R. § 2.19(c) mandates, "resolve" the dispute concerning the accuracy of the information. In the context of the case, a brief, but explicit response to Petitioner's claim, indicating the reason(s) for its conclusion, would be sufficient.

the *ex post facto* clause and that the Parole Commission improperly used his military conviction in determining his salient factor score under the guidelines are without merit. As to those claims, the petition is, accordingly, dismissed with prejudice.

Petitioner's remaining claim concerning the Parole Commission's consideration of his 1974 Japanese conviction is dismissed without prejudice to Petitioner filing an appropriate action following his interim parole hearing and exhaustion of available administrative remedies.

IT IS SO ORDERED.[19]

**19.** In view of this disposition, Petitioner's recently-filed motion for a temporary restraining order enjoining his transfer from FCI Milan to another prison pending decision of his claim is moot. Moreover, the Court notes that F.R. App.P. 23(a), upon which Petitioner relies, prohibits transfer of a prisoner pending *appellate review* of a decision in a habeas corpus proceeding. Thus, that Rule would not apply unless and until Petitioner files an appeal from a judgment of this Court.